IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DALE E. McCORMICK,

Petitioner,

v.                                    CASE NO.  10-3168-SAC

STEPHEN SIX,
Attorney General,

Respondent.

MEMORANDUM AND ORDER

After having reviewed this habeas corpus petition filed pursuant to 28 U.S.C. § 2254, the court entered a Memorandum and Order (screening order) granting petitioner time to show that he had exhausted state remedies.  The matter is before the court to consider whether or not petitioner complied with that order and upon the following motions:

Motion to Alter or Amend Judgment (Doc. 8);

Motion for Recusal and Random Reassignment (Doc. 9);

Motion for Bail (Doc. 10);

Motion for Immediate Ex Parte Hearing (Doc. 11);

Motion to Transfer Documents (Doc. 12);

Motion to Expedite Proceedings (Doc. 13); and

Motion for Progress or Motion to Transfer Case (Doc. 14).


MOTION FOR RECUSAL AND RANDOM REASSIGNMENT

As the basis for his Motion for Recusal and Random Reassignment, Mr. McCormick alleges that "all State prisoner habeas petitions" filed in this district are assigned to the undersigned judge and that this judge's rulings in these cases give a "reasonable person cause to question impartiality."  Petitioner

also alleges that he personally has been prejudiced[1] herein by the "non-random assignment procedure" and by the undersigned judge's "advocacy on behalf of respondent in this and earlier cases."  He asks the undersigned judge to recuse himself under 28 U.S.C. § 455 and to direct the clerk to randomly reassign this case to a different judge.[2]

With this motion pending, Mr. McCormick filed a petition for writ of mandamus in the Tenth Circuit Court of Appeals, In re Dale E. McCormick, App. Case No. 11-3071 (10th Cir. Apr. 19, 2011). In the Tenth Circuit, he sought essentially the same relief based upon the same allegations.  He challenged "the case-assignment practice in the District of Kansas of all state habeas prisoner cases being non-randomly assigned to Judge Sam Crow."  Id. at *3. He requested that the Circuit direct recusal of the undersigned judge from the instant § 2254 proceedings because "a reasonable person, knowing all (the) relevant facts, would harbor doubts about the judge's impartiality."  Id. at *5-*6.  That recusal request, like the one already before this court, was based upon McCormick's allegations that the undersigned judge:

> "always" interpos(es) himself as a kind of ad hoc counsel on behalf of the respondents in habeas cases, in order to "always" set forth any conceivable affirmative defense on behalf of such respondents . . . while never acting as advocate on behalf of habeas petitioners.

---

[1]     Mr. McCormick may feel at a disadvantage because this court is aware of his prior § 2254 filings.  However, there is nothing unethical about a court taking into account prior filings and litigation practices of a particular litigant.

[2]     The court notes that a request by petitioner for random reassignment of this case was already considered and denied in the court's screening order. Mr. McCormick is again advised that repetitive, argumentative motions impede, rather than facilitate, the progress of his case.

Id. at *6.  In his motion to this court, as he had before the Tenth Circuit, Mr. McCormick refers to "numerous habeas cases from 2010 in which Judge Crow identified statute of limitations, exhaustion, and procedural default issues."  Id. at *5.  The Tenth Circuit denied the mandamus petition, holding:

> The assignment of state prisoner habeas cases to Judge Crow complies with both (28 U.S.C.) § 137 and D. Kan. L.R. 40.1.  And it does not violate Mr. McCormick's rights. . . .  [I]n the habeas context there is no impropriety in the district court's screening petitions and identifying issues such as untimeliness, lack of exhaustion, and procedural default.

Id.  The Tenth Circuit cited Rule 4 of the Rules Governing Section 2254 Cases, 28 U.S.C. Rules Foll. § 2254, that "require[] a judge to perform an initial screening of a § 2254 application."  They also cited Supreme Court and Tenth Circuit Court precedent that "allows a district court to recognize affirmative defenses sua sponte in the habeas context."  Id. at *6.  Finally, the court held:

> The "fact that Judge Crow strictly construes his screening duties and chooses to exercise his discretion in every case in which limitations, procedural default, and/or exhaustion may be an issue does not mean that he has abrogated his role as an impartial decisionmaker.

Id. at *7.

Mr. McCormick presents no facts or arguments in his § 455 motion before this court that were not rejected by the Tenth Circuit in denying his mandamus petition.  For the  reasons stated by the Tenth Circuit and those that follow, the court finds that this motion for recusal and reassignment has no factual or legal merit.

Petitioner's motion to recuse is asserted under § 455(a) and is based upon his claim that the undersigned judge's "impartiality might reasonably be questioned." The general purpose of § 455(a) is "to promote public confidence in the integrity of the judicial process" and to avoid even the "appearance of impropriety." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988). "[W]hat matters is not the reality of bias or prejudice but its appearance." Liteky v. U.S., 510 U.S. 540, 548 (1994). Under § 455(a), "a judge has a continuing duty to recuse . . . if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." U.S. v. Cooley, 1 F.3d 985, 992 (10th Cir. 1993). "The decision to recuse is committed to the sound discretion of the district court." U.S. v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992)(citation omitted). While a judge is obligated to disqualify himself when there are sufficient factual grounds, he is not obligated to recuse when there are not. See Cooley, 1 F.3d at 994 (citing Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987)); Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). The standard is purely objective, and the inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. See Nichols, 71 F.3d at 351; Cooley, 1 F.3d at 993. In applying the objective test, "the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question." Id. at 993 (citing U.S. v. Gipson, 835 F.2d 1323, 1325 (10th Cir. 1988); Willner v. University of Kansas, 848 F.2d 1023, 1026-27 (10th Cir. 1988); U.S. v. Hines, 696 F.2d 722, 729 (10th Cir. 1982); In re Allied Signal, Inc., 891 F.2d

4

967, 970 (1st Cir. 1989), <u>cert. denied</u>, 495 U.S. 957 (1990)).  The statute is not intended to give litigants a veto power over sitting judges.  <u>See</u>  <u>Cooley</u>, 1 F.3d at 993.

Petitioner's motion for recusal is not supported by the conclusory statements or the factual allegations made in the motion.  He alleges "two main factual circumstances" in support: (1) "that all State prisoner habeas petitions are initially assigned to Judge Crow," and (2) that Judge Crow sets forth potential defenses and "otherwise advocat(es) for the respondent in each of such cases" but never sets forth any arguments on behalf of prisoners.  As discussed, the first circumstance has already been rejected by the Tenth Circuit as grounds for judicial disqualification in this case.  This court additionally finds that no facts arising from this circumstance are alleged in the motion that show the undersigned judge has ruled in particular cases other than with impartiality.  Nor are facts alleged from this circumstance that would cause an objective, knowledgeable observer to question my impartiality.

The court further finds that the second circumstance posited by Mr. McCormick is simply incorrect.  Under § 455, "factual allegations do not have to be taken as true."  <u>In re Bennett</u>, 283 B.R. 308, 322 (10th Cir. 2002).  Mr. McCormick's view, that this court's rulings upon screening state habeas petitions never benefit petitioners, completely overlooks the very serious benefit to a habeas petitioner of early action upon unexhausted

claims.[3]  An early ruling on exhaustion is crucial for the habeas petitioner because of the one-year statute of limitations.[4]  If a § 2254 petition containing only exhausted claims is not filed within the applicable one-year period, the petitioner is likely to be forever barred from habeas review in federal court.  Generally, the limitations period starts to run or recommences[5] on the day after the prisoner has completed state post-conviction remedies, because the completion of these proceedings signals the end of statutory tolling for pending state actions.  Statutory tolling is not provided for any of the time during which a premature federal habeas action is pending.  For these reasons, this court immediately screens the initial pleading for any indication of a failure to exhaust state court remedies.  It then issues an order not only to allow petitioner to refute its initial finding of this defect, but as a reminder of the exhaustion prerequisite and possible preclusive consequences of prolonging federal proceedings that involve unexhausted claims or a mixed petition.[6]  If the State

---

[3]     Early dismissal without prejudice based on failure to exhaust is neither wholly detrimental to the habeas petitioner nor unquestionably beneficial the respondent.  The longer the federal case is pending before the exhaustion defect culminates in dismissal, the more likely it is that the statute of limitations will expire on the claims.  If it does expire, the State will have altogether avoided having to address the merits.

[4]     Kansas statutes now provide similar time limitations on some post-conviction remedies.  If petitioner misses state deadlines while prematurely seeking relief in federal court, he may face procedural default there.

[5]     A portion of the one-year period may have already run.  Generally, the statute of limitations is  statutorily tolled until 90 days following the completion of a direct appeal, and then from the file date to the completion of any pertinent state habeas proceedings only.  It follows that any day on which there is neither direct appeal nor pertinent state habeas proceedings actually pending, the statute of limitations is running.

[6]     Federal petitions are even filed by state detainees in the midst of state criminal trials.  There is then an added urgency to discuss failure to exhaust and to remind petitioners that all constitutional claims must first be presented to the trial court and on direct appeal, or their claims may be waived.

is required to respond and eventually files a valid motion to dismiss for failure to exhaust, the case may then be dismissed upon that motion; and the limitations period will have run during all the time it took for the State to prepare and the court to decide the motion.   The District of Kansas, though under no obligation to do so, thus strives to avoid for petitioner the protracted running of the limitations period in a case that the court perceives is destined to be dismissed later, if not sooner, for failure to exhaust.

Petitioner also completely ignores clearly established legal precedent regarding the very limited and unique nature of the habeas corpus remedy and the long standing doctrine of comity that underlies the exhaustion prerequisite.   Exhaustion, along with other gate-keeping provisions of the PLRA like the statute of limitations and the second and successive application bar, are matters that a habeas court properly addresses sua sponte when such defects appear on the face of the petition.[7]   Otherwise, the court

---

[7]   The U.S. Supreme Court has expressly held that AEDPA's time bar and other affirmative defenses that are "threshold constraints" and "unique to the habeas context such as exhaustion of state remedies . . . may be raised by a court sua sponte" provided parties are accorded notice and an opportunity to state their positions.   See U.S. v. Mitchell, 518 F.3d 740, 746 (10th Cir. 2008)(citing Day v. McDonough, 547 U.S. 198, 206, 210 (2006); Granberry v. Greer, 481 U.S. 129, 133 (1987)("Sua sponte consideration of exhaustion of state remedies is explicitly permitted by Supreme Court precedent."); Caspari v. Bohlen, 510 U.S. 383, 389 (1994)(nonretroactivity)).   Courts have recognized that these "threshold barriers," expressly including exhaustion of state remedies, "implicat[e] values beyond the concerns of the parties."   Day, 547 U.S. at 205 (citing Acosta v. Artuz, 221 F.3d 117 (2nd Cir. 2000)("The AEDPA statute of limitations promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time.").   "[T]he Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default. . . ."   Day, 547 U.S. at 206; see Stanko v. Davis, 617 F.3d 1262, 1271, n.12 (10th Cir. 2010)("This court allows procedural default to be raised sua sponte.").

Mr. McCormick misconstrues Allen v. Zavaras, relied upon by him for the proposition that "a district court may not sua sponte raise the issue of a failure to exhaust state court remedies."   See Butt v. Hartley, 378 Fed.Appx.

is allowing judicial resources to be expended where Congress has explicitly acted to curb such expenditures.  Mr. McCormick has filed 12 cases in this court, some habeas and some civil.  He complains of the undersigned judge's screening of state habeas petitions for threshold defects including untimeliness, failure to exhaust, and procedural default on the basis that these are affirmative defenses that must be raised by defendants and not sua sponte by the court.  He repeatedly asserts that the constraints on the court's consideration of affirmative defenses unless raised by defendants, that apply in civil cases, also apply in the habeas context.  However, as the cited cases plainly hold and he was informed by the Tenth Circuit in its opinion denying his mandamus petition, this legal premise that undergirds his argument for recusal is directly contrary to established legal precedent.

Finally, the court emphasizes that the basis for Mr. McCormick's motion to recuse is not any "extrajudicial source." Instead, his sole "evidence" consists of judicial actions and rulings that "occurred in the course of" this and prior judicial proceedings.  "[J]udicial rulings alone almost never constitute a valid basis" for a § 455(a) motion.  Liteky, 510 U.S. at 555; see Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997); Cooley, 1 F.3d at 993 ("prior rulings in the proceeding, or another

---

822, 826 n.2 (10th Cir. 2010), cert. denied, 131 S.Ct. 503, 178 L.Ed.2d 370 (Nov. 1, 2010).  In Allen, the Tenth Circuit was asked to hold that "a district court cannot sua sponte dismiss a habeas petition for failure to exhaust unless the government pleads failure to exhaust as an affirmative defense or unless the petitioner's failure to exhaust is clear from the face of the petition;" however the court declined.  Allen v. Zavaras, 568 F.3d 1197, 1201 (10th Cir. 2009).  The court noted instead that "the habeas statute itself specifically requires exhaustion," and that Rule 4 of the Federal Rules of Habeas Corpus expressly requires dismissal of a habeas petition "[i]f it plainly appears from the petition and any attached exhibit that petitioner is not entitled to relief in the district court."  Id. at 1201-02.

proceeding, solely because they were adverse" ordinarily will not suffice for disqualification under § 455(a)).  The assignment of state habeas cases and this judge's opinions as to common, established defects in federal habeas petitions do not evince a reliance upon knowledge acquired outside judicial proceedings.  Nor do they display a "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 510 U.S. at 555. The court concludes that petitioner's allegations do not show that sufficient factual grounds exist that would cause a reasonable person,[8] knowing all the facts, to harbor doubts about this judge's impartiality.  See Cooley, 1 F.3d at 992; U.S. v. Cooper, 283 F.Supp.2d 1215, 1223 (D.Kan. 2003); In re Bennett, 283 B.R. at 323.


## MOTION TO ALTER OR AMEND JUDGMENT

The court finds, at the outset, that this is not a proper motion to alter or amend judgment for the obvious reason that no judgment has been entered in this case.  Instead, this motion is construed as one for reconsideration of a non-dispositive order. D. Kan. Rule 7.3 governs motions to reconsider in this court.  Rule 7.3(b) provides:

> Non-dispositive Orders.
>
> Parties seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the court extends the time.

---

[8]      The reasonable person standard in this context contemplates a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person." U.S. v. Evans, 262 F.Supp.2d 1292, 1294 (D. Utah 2003)(citing U.S. v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995)(citing Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990)).

A motion to reconsider must be based on:

(1) an intervening change in controlling law;

(2) the availability of new evidence; or

(3) the need to correct clear error or prevent manifest injustice.

U. S. Dist. Ct. Rules D.Kan., Rule 7.3; <u>Ferluga v. Eickhoff</u>, 236 F.R.D. 546, 549 (D.Kan. 2006)(citing D. Kan. Rule 7.3(b); <u>see also</u> <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000)(stating the same three grounds for a Rule 59(e) motion)). In a motion for reconsideration of a non-dispositive order, it is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." <u>Id.</u> at 1012. "Additionally, such a motion does not permit a losing party to . . . present new legal theories that could have been raised earlier." <u>Id.</u> (citing <u>Brown v. Presbyterian Healthcare Servs.</u>, 101 F.3d 1324, 1332 (10th Cir. 1996), <u>cert</u>. <u>denied</u>, 520 U.S. 1181 (1996)); <u>see Servants of Paraclete</u>, 204 F.3d at 1012; <u>Resolution Trust Corp. v. Greif</u>, 906 F.Supp. 1446, 1456 (D. Kan. 1995).

In his motion, Mr. McCormick does not allege an intervening change in the law or the availability of new evidence. Instead, he contends that this court "misapprehended the controlling law and/or controlling facts." He bases this contention on two assertions: (1) the court erred in holding that he had not sufficiently alleged exhaustion in his Petition, and (2) the court erred in rejecting his allegation that "inordinate delay by the state courts warrants prompt action by this court." To support his first assertion, petitioner again argues, contrary to clearly established legal precedent, that the court improperly required him to show

exhaustion, when exhaustion is an affirmative defense placing the burden on respondent to prove the applicability of this defense. He makes the corollary arguments that he cannot be required to do more than state that he has exhausted; and that the only proper course was for this court to require the State to file an answer addressing whether or not he has exhausted.[9]  As authority for the latter argument, he refers to the Rules Governing § 2254 cases providing that respondents are responsible for submitting the state court records in a habeas proceeding, and extrapolates that only the State may be required to provide records to prove or disprove exhaustion.  He also argues that the Attorney General has the expertise and is "in a much better position to inform court" on the matter of exhaustion.[10]

Mr. McCormick's arguments are nothing more than a rehash of arguments previously asserted by him not only before this court in this case, but in his 2008 case,[11] in his appeal of that case, and

[9]    The court suggested that Mr. McCormick provide excerpts from his state appellate briefs to show exhaustion because it assumed that, since those briefs were submitted and carefully considered in his prior 2254 case, he had access, and because his statements as to exhaustion have at times been more self-serving than candid.  Providing state court records was not the only acceptable means for him to prove exhaustion, and his references to briefs by page number is appropriate.

[10]    Petitioner is correct that this court has the authority to require respondents to file a brief on an exhaustion issue, and it did so in his 2008 case.  He is incorrect that this court lacks authority to require that he allege sufficient facts or alternatively provide portions of the record to show that he has exhausted.  Furthermore, if Mr. McCormick were proceeding in forma pauperis and appeared incapable of making the showing that he meets the exhaustion prerequisite, this court would, as it has in such cases, require respondent to respond on the exhaustion issue.

[11]    The court takes judicial notice of petitioner's 2008 federal habeas action, which was dismissed as a mixed petition.  This court denied a similar Motion for Reconsideration of similar rulings on exhaustion in that case:

Petitioner's arguments regarding exhaustion have been thoroughly considered and rejected, and this court's rulings regarding exhaustion have been repeatedly discussed in this case and in McCormick v. Morrison, 2008 WL 360586 (*1-*2)(D.Kan., Feb. 8, 2008).

before the Tenth Circuit in his mandamus petition.  He presents no new, convincing argument or authority that this court's rulings regarding his burden and failure to show exhaustion in his Petition are erroneous.[12]

Petitioner's second premise, that this court erred in holding he had not shown "inordinate" delay in his state post-conviction proceedings sufficient to excuse exhaustion, is likewise nothing more than the improper rehash of previously rejected arguments.  In short, the court finds that Mr. McCormick's arguments in this motion were either already raised and rejected in the court's prior order, or could have been but were not presented. "Suffice it to say that a motion to reconsider is not an opportunity to rehash previously rejected arguments or to offer new legal theories or facts."  Ferluga, 236 F.R.D. at 549 (citation omitted).  The court additionally takes judicial notice of the significant fact, not reported by Mr. McCormick, that a Memorandum

_____

McCormick v. Six, 2008 WL 3274464, *1 n. 1; Case No. 08-3058-SAC (D.Kan. Aug. 8, 2008).

[12]     "A state prisoner bringing a habeas action "bears the burden of showing that he has exhausted available state remedies." Barringer v. Wilyard, 301 Fed.Appx. 764, 767 (10th Cir. 2008)(unpublished, cited as persuasive authority); Clonce v. Presley, 640 F.2d 271, 273 (10th Cir. 1981)(citing 28 U.S.C. § 2254(b)(c)); Miranda v. Cooper, 967 F.2d 392, 398 (10th Cir. 1992); Bond v. Oklahoma, 546 F.2d 1369, 1377 (10th Cir. 1976).  The U.S. Supreme Court has held that "with any § 2254 petition, the petitioner must satisfy the procedural prerequisites for relief including . . . exhaustion of remedies." Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 404 (2001)(citing see 28 U.S.C. § 2254(b)).  The Tenth Circuit plainly held in a habeas appeal by Mr. McCormick challenging an earlier conviction:

        In sum, the "substance of a habeas petitioner's federal claims must
        be fairly presented to the state courts before they can be raised in
        federal court, and petitioner bears the burden of demonstrating that
        he has exhausted his available state remedies."   (Citations
        omitted).

McCormick v. Kline, 572 F.3d 841, 851 (10th Cir. 2009).  In that case, as here, Mr. McCormick was required to "demonstrate that he" had "fairly presented" the challenge he raised to his 2001 convictions "to the state courts." Id. at 852.

of Decision was entered by the Douglas County District Court
denying Mr. McCormick's 60-1507 motion on January 19, 2011.

Finally, the court rejects petitioner's argument that the
only lawful course was to require the State to respond and provide
any relevant records on the exhaustion issue.[13] Neither controlling
statutory or case law nor a note to the Rules following § 2254
mentioned by petitioner so provide.  On the other hand, the Habeas
Rules expressly provide that respondent is not required to answer
the petition in any fashion unless the court so orders.
Petitioner's motion for reconsideration of the court's screening
order is denied.


**COMPLIANCE WITH COURT ORDER**

The court next determines whether or not Mr. McCormick has
complied with the court's screening order requiring that he show
exhaustion.  Therein, the court ordered:

> petitioner is granted thirty (30) days in which to
> provide proof that he has fully and properly
> exhausted each claim and all crucial facts raised
> in his Petition or; in the alternative, to file an
> Amended Petition, upon forms provided by the
> court, that omits all claims and crucial facts
> that are not exhausted and contains clear proof of
> exhaustion of each retained claim and the facts
> alleged in support of that claim.

McCormick v. Six, 2010 WL 3927635, *7 (D.Kan. Oct. 4, 2010).
Petitioner was forewarned that if he failed to properly comply with
the court's order in the time provided, this Petition would be
dismissed without prejudice.

---

[13]     Despite his unusual abilities as a pro se litigant, the court did in
fact require a response on this very exhaustion question in the 2008 case.  Thus,
the same exhaustion issues were previously fully briefed and ruled upon by the
court.

The only pleading Mr. McCormick filed within the prescribed time limit was his Motion to Alter or Amend Judgment discussed above. He did not file a pleading entitled Response. Nor did he file a motion for extension of time or to stay. The motion for reconsideration he did file did not automatically suspend the time in which he was required to comply with the court's screening order.[14]

Nevertheless, the court very liberally considers petitioner's arguments in his Motion to Alter or Amend Judgment that this court "misapprehended the facts alleged in the Petition" when it found that he had not adequately alleged proper exhaustion, as his effort to comply with the first option in the court's screening order.[15] The claims raised in the Petition were set forth in the screening order: (1) failure to provide "full and fair litigation" of petitioner's Fourth Amendment claims; (2) insufficient evidence of "bodily harm" and/or erroneous "bodily harm" jury instruction denied due process;[16] (3) denial of Sixth

_____

[14]    Mr. McCormick was on notice that a frivolous motion for reconsideration does not suspend the court's order to show cause or its time limit. In his 2008 case, "[r]ather than complying with the court's order by exercising either option" of showing exhaustion on all claims or filing an Amended Petition containing only the three claims the court had found to be exhausted, he "filed a frivolous motion for reconsideration rehashing his arguments." McCormick v. Six, 2008 WL 3274464, *1, Case No. 08-3085-SAC (D.Kan. Aug. 8, 2008). He also filed a Notice of Appeal even though no final judgment had been entered. The court found that the matter was not automatically stayed, that the time for him to respond had expired, and that he had failed to respond to the court's order. Respondent's motion to dismiss for failure to exhaust was sustained, and the petition was dismissed as mixed.

[15]    Petitioner has unmistakably rejected the option of proceeding only upon his exhausted claims, since he has not filed an Amended Petition on forms omitting all unexhausted claims and crucial facts.

[16]    The court perceives this as two related but different claims: (1) the jury was erroneously instructed on the definition of "bodily harm;" and (2) there was insufficient evidence of bodily harm to prove aggravated kidnaping.

Amendment right to counsel,[17] and (4) prosecutorial misconduct.[18] McCormick v. Six, 2010 WL 3927635 (D.Kan. Oct. 4, 2010). The court tentatively found that petitioner had only partially exhausted state court remedies, and discussed each claim, the facts alleged in support, and its reasoning as to exhaustion.

As to issue (1), petitioner refers to briefs submitted on direct appeal to the KCA and the KSC and alleges:

> While it is true that appellate counsel never specifically mentioned the "drug evidence," what she did say is: "[t]he district court erred in overruling Mr. McCormick's motion to suppress evidence seized from the home pursuant to the residential warrant because the warrant failed to comply with the Fourth Amendment." Although counsel did not specifically list each item of evidence that should have been suppressed, she used the catch-all phrase "evidence seized from the home."

He apparently thus contends that his counsel's arguments to the KCA and KSC included a proper challenge to the drug evidence.

Petitioner's Fourth Amendment challenges involve (1) evidence introduced in his person-felony trial that was seized without a warrant from his backpack during an inventory search following his arrest; (2) evidence including a few photographs and personal journal entries introduced at his person-felony trial that was seized during a search of his residence with a warrant claimed

---

[17]    This claim has several facets: (1) counsel initially appointed to represent Mr. McCormick at his person-felony trial were incompetent primarily for refusing to pursue matters that McCormick believed they should; (2) a conflict of interest with this counsel was created by McCormick's claims that they were ineffective; (3) the court improperly refused to appoint new counsel; (4) as a result Mr. McCormick was forced to represent himself; and (5) his decision to waive his right to counsel was not voluntary.

[18]    This claim also has many underlying factual allegations that may be summarized as follows: (1) withholding of exculpatory evidence including notes of two law enforcement officers and a DNA report, (2) repeatedly putting prejudicial matters before the jury, and (3) prejudicial statements during closing.

to be invalid; and (3) evidence that was discovered at his residence during the same search with the allegedly invalid warrant that led to his separate trial and convictions of drug related offenses.   In the 2008 case, this court found McCormick's "own statement" that his counsel on direct appeal "failed to mention" his drug convictions "in her brief to the KCOA" or the Petition for Review demonstrated that his challenges to those convictions were not exhausted in the state appellate courts.   McCormick v. Six, 2008 WL 2282643, *1,[19] Case No. 08-3058-SAC (D.Kan. May 30, 2008), COA denied and appeal dismissed, McCormick v. Six, 306 Fed.Appx. 424 (10th Cir. Jan. 6, 2009).   The court also found that Mr. McCormick had presented challenges to evidence seized at his residence and introduced at his person-felony trial, and had sufficiently alleged exhaustion on those particular Fourth Amendment challenges, but had "not exhausted his Fourth Amendment claims as to drug evidence."   Id., n. 2.

    Petitioner also argues that his Fourth Amendment claims as

---

[19]    In McCormick v. Six, 2008 WL 2282643, *1, Case No. 08-3058-SAC (D.Kan. May 30, 2008), the court found that petitioner:

    has not exhausted his Fourth Amendment claims as to drug evidence. Respondent submits that the issues concerning petitioner's drug convictions are "subsumed" within his other Fourth Amendment claims, but not reviewable under Stone v. Powell.  Petitioner, at his separate court trial, did expressly "preserve" for appeal his Fourth Amendment objections to the search and the drug evidence. Nevertheless, if his appellate counsel declined or failed to raise these objections on appeal, they are at least unexhausted and may even be procedurally defaulted.  Petitioner's ineffective assistance of appellate counsel claim, which might include counsel's failure to challenge his drug convictions as a ground, is another clearly unexhausted claim.

Id. at *1, n. 2.

to drug evidence cannot be dismissed for failure to exhaust because respondent in the 2008 case stated that petitioner's challenge to the drug evidence was "subsumed" within his Fourth Amendment challenges to the warrant.  This argument was rejected in his 2008 case as a basis for finding exhaustion.  Petitioner's allegations in his motion still provide no reason to believe that he has since exhausted this claim.  He does not show that he has ever filed any direct appeal or state post-conviction petition that expressly sought to overturn his conviction of drug charges on Fourth Amendment or any other grounds.[20]  Since the drug evidence was not introduced at his person-felony trial, even if he prevails on his Fourth Amendment challenge to the search warrant in this case, it will directly impact his convictions from his person-felony trial only.  While he may have intended to challenge his drug convictions on the same Fourth Amendment grounds, at this juncture the court has been presented with no evidence that he has properly raised a challenge to his drug convictions in state court on any grounds.

---

[20]     "On February 16, 2003, . . Mr. McCormick committed crimes for which a Douglas County, Kansas, jury later convicted him of aggravated kidnapping, aggravated burglary, and aggravated intimidation of a witness or victim." McCormick v. Kline, 572 F.3d 841, 846 (10th Cir. 2009)(citing see State v. McCormick, 37 Kan.App.2d 828, 159 P.3d 194, 199-202 (2007)).  "As a result of these February 2004 convictions, McCormick was sentenced to 213 months' imprisonment" on April 15, 2004.  Id.
     In the course of executing a search warrant obtained in connection with the person-felony charges, officers discovered a marijuana-growing operation in the basement of Mr. McCormick's home.  He was then charged with drug-related charges.  The drug-related crimes and his person-felony crimes were all charged in the same complaint in Case No. 2003 CR 0236.  However, the trial court granted defendant's motion to sever the person-felony charges from the drug charges for trial.  The person-felony charges were tried before a jury.  Later, the drug charges were tried on stipulated facts to the court.  Mr. McCormick was convicted of misdemeanor possession of drug paraphernalia, cultivation of marijuana, and tax stamp violation, and sentenced to a controlling term of 15 months to run concurrently with each other and with the person-felony convictions.
     He directly appealed his person-felony convictions.  McCormick v. State, Case No. 2008 CV 451, *1 (D.Ct. DG.Co. Jan. 10, 2011).  On direct appeal, the KCA affirmed his convictions on May 25, 2007.  The Kansas Supreme Court denied his Petition for Review on September 27, 2007.

As to Issue (2), petitioner asserts that what his counsel argued in his state appellate briefs encompassed this claim, and that he made the same arguments in his "pro se Supplemental Petition for Review." He mentions that the KCA never addressed the issue and suggests that the KSC declined to hear it on discretionary review. In petitioner's 2008 case, this court carefully considered "Appellant's Petition for Review" filed by counsel in the KSC on direct appeal and found that the issues raised were: (I) "It was error for the court to permit Mr. McCormick to proceed pro se when he did not want to" and he was denied the right to trial counsel; (II) the trial court erred in denying suppression of evidence seized from defendant's computer and residence pursuant to an overly broad search warrant, and the KCA's finding that its admission was harmless was erroneous, and (III) improper comments by the State denied defendant the right to a fair trial. The court concluded that these issues "are the only ones that have been fully and properly exhausted." McCormick v. Six, 2008 WL 2282643 at *6, n.8.[21] Petitioner's Issue (2) regarding

_____

[21] Without question, petitioner made pro se attempts to present additional claims to the KSC. First, he sought to file a pro se supplemental Petition for Review at the same time he was represented by counsel. However, the docket sheet in App.Case No. 92408 showed he was denied leave to file his "Supplemental Petition for Review." As a result, this court held that this rejected filing did not constitute proper exhaustion on the claims raised therein. The fact that the KSC refused to allow him to file his pro se Supplemental Petition for Review distinguishes his case from any he cites where a pro se supplemental brief or petition was accepted and considered by the KSC. In his motion, he simply argues again that this pro se filing amounted to exhaustion, but makes no new points or allegations that were not already rejected in his prior case.

Mr. McCormick also filed a 101-page "petition for writ of habeas corpus, pursuant to Ks.Sup.Ct. Rule 9.01 . . ," directly in the Kansas Supreme Court claiming his appellate counsel was constitutionally ineffective for failing to properly raise several issues on direct appeal. The Kansas Supreme Court summarily denied this petition on December 18, 2007. See State v. McCormick, 2008 WL 360586 at *2 (D.Kan. Feb. 8, 2008)(unpublished). This court held in the 2008 case that this attempt failed to qualify as a proper, fair presentation to the KSC, specifically noting Mr. McCormick had stated it was not an adjudication on the merits. He appealed this court's 2008 decision, and the Tenth Circuit

bodily harm is obviously not one of the three claims that were
presented to the KSC on direct appeal.   None of petitioner's
allegations in his motion/response proves that he properly
exhausted state court remedies on any claims other than those
presented in Appellant's Petition for Review to the KSC.

Petitioner was informed in his 2008 case and in the
screening order here that the exhaustion prerequisite requires him
to give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's
established appellate review process before he presents those
claims to a federal court in a habeas petition.   O'Sullivan v.
Boerckel, 526 U.S. 838, 842, 844-45 (1999); Montez v. McKinna, 208
F.3d 862, (10th Cir. 2000).   It has long been established in this
district that this means the claims must have been "properly
presented" as federal constitutional issues "to the highest state
court, either by direct review of the conviction or in a
post-conviction attack." Dever v. Kansas State Penitentiary, 36
F.3d 1531, 1534 (10th Cir. 1994).   Generally, without a showing of
exceptional circumstances, presenting challenges to state
convictions that have not been presented to the trial court and the
KCA in an original action filed directly in the Kansas Supreme
Court does not comply with this "one complete round" requirement.
The allegations in petitioner's motion/response show no Kansas
appellate court action that has been taken since his direct appeal.

---

found that the "district court dismissed the petition without prejudice on August
8, 2004, because its mixture of exhausted and unexhausted claims deprived the
court of authority, under § 2254, to review any of those claims." Id. at 851
(citing see Rhines v. Weber, 544 U.S. 269, 273 (2005).   The Tenth Circuit "denied
McCormick's request for a COA to challenge that dismissal." Id. (citing
McCormick v. Six, 306 Fed.Appx. 424, 425-26 (10th Cir. 2009)(unpublished)).

Thus, he still fails to demonstrate that this habeas claim has been "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding.

As to Issue (4), petitioner states in his motion that there are two "main categories of misconduct:" (1) withholding of exculpatory evidence, and (1) trial misconduct. He alleges that he presented the exculpatory evidence allegations in his pro se Supplemental Petition for Review and again argues that this constituted sufficient exhaustion. However, as already discussed, this very argument was rejected in his 2008 case and nothing in his motion calls that holding into question. Moreover, petitioner candidly admits that the trial misconduct "component" presents a more difficult exhaustion issue because his "appellate counsel failed to include most . . . instances of trial misconduct in the Petition for Review," although she had argued them to the KCA. He even suggests that these claims are procedurally defaulted as a result. He then tangentially argues that it is not appropriate for this court to address procedural default because it is an affirmative defense on which the State bears the burden, and that respondent must be directed to file an Answer forthwith. Petitioner's argument that this court cannot sua sponte address procedural default is legally frivolous based on the authorities previously cited herein. In any event, procedural default is not presently at issue. The court finds that not all petitioner's claims of prosecutorial misconduct have been fully and properly exhausted, and that the Petition is mixed as a result.

As Mr. McCormick has previously been informed on more than one occasion, since he includes claims in his Petition on which

state remedies have not been properly and fully exhausted, his
Petition is mixed, and must be dismissed.[22]

        The court's screening order further provided:

        [E]ven if petitioner proves he has exhausted all
        claims contained in his current federal Petition,
        he has thus far not alleged facts to convince this
        court that it should exercise its discretion to
        determine his federal Petition prior to a ruling
        in his pending state post-conviction action.

Id. at *7.  Mr. McCormick does not address this finding.  The court
takes judicial notice of the Memorandum of Decision filed in
McCormick v. State, Case No. 2008 CV 451 (DG.CO. D.Ct. Jan. 10,
2011).  There the judge set forth the issues raised in McCormick's
60-1507 petition: (I) defendant was denied his right to a
disinterested prosecutor and appellate counsel was ineffective for
failing to raise this issue; (II) the State used illegally seized
evidence at trial and appellate counsel was ineffective in failing
to properly raise this issue; (III) defendant was denied his right
to trial counsel and appellate counsel was ineffective for failing
to raise this issue in a manner likely to result in reversal; (IV)
government misconduct denied defendant a fair trial and appellate
counsel was ineffective for failing to raise the issue in a manner
likely to result in reversal; (V) defendant was denied his right to

_____

        [22]     As to Issue (3), petitioner asserts that he raised all the grounds
on direct appeal for his claim of denial of his right to counsel that he now
presents in his federal Petition, namely that he was improperly denied his right
to counsel when the trial court refused to appoint new counsel after a conflict
of interest with current counsel arose and he had "proved" counsel was
incompetent, and thus his waiver of counsel was not voluntary.  He argues that
his appellate counsel set out these claims in the brief on appeal.  He asserts
that, while he has added a few facts in his Petition, the law allows him to add
new facts that are only "color."  Although the court is not convinced that
petitioner properly presented all crucial, underlying facts on this claim to the
KSC, a determination as to exhaustion on this issue is not now required given the
court's other findings.  Claims of ineffective assistance of either trial or
appellate counsel must also be fully exhausted when they are relied upon as an
underlying basis for another claim.

confrontation, fundamental fairness, and to present a defense because the trial court did not allow him to utilize the alleged victim's diary at trial; (VI) the jury was erroneously instructed; (VII) there was insufficient evidence to convict defendant on some of the charges; (VIII) cumulative error deprived defendant of a fair trial; and (IX) the trial court lacked jurisdiction to sentence the defendant on the drug charges.

A cursory comparison of these claims with those raised in his federal Petition clearly indicates that Mr. McCormick is currently proceeding upon claims in state court that are the same as those he raises in the instant federal Petition.  Furthermore, the overall claim before the state court at this time, the legality of his state convictions and confinement thereon, is the same as would be before this court herein.  It would be inappropriate as a matter of comity for this court to proceed on claims that are currently under review in a pending state post-conviction appeal. As the Supreme Court has explained:

> The exhaustion doctrine recognizes that state and federal courts are equally bound to apply and enforce federal law, and States are entitled to administer their criminal justice systems without federal court interference.

O'Sullivan, 526 U.S. at 844.  It is presumed that the state courts will enforce the federal constitution as fully and fairly as a federal court.   See Duckworth v. Serrano, 454 U.S. 1, 3-4 (1981)(per curiam).  Petitioner's conclusory allegations to the contrary and his self-serving protestation that he has served the sentence for the lesser offense of which he should have been

convicted do not convince the court otherwise.[23]

Congress has emphatically directed the courts that habeas petitioners seeking relief in federal court must first exhaust all available state court remedies, unless doing so would be futile because of 'an absence of available State corrective process' or because 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" Magar v. Parker, 490 F.3d 816, 818 (10th Cir. 2007)(quoting 28 U.S.C. § 2254(b)(1)). Under this requirement, "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." Rhines, 544 U.S. at 273 (summarizing Rose v. Lundy, 455 U.S. 509, 518-19 (1982); see also Allen, 568 F.3d at 1201 n. 7 (discussing mixed petitions and Rhines). "Under Rose, 455 U.S. at 510, 522], federal district courts must dismiss mixed habeas petitions." Pliler v. Ford, 542 U.S. 225, 230 (2004)(a federal district court "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."). A petition that contains claims that are both exhausted and unexhausted is a mixed petition.

In sum, the court finds that Mr. McCormick has not shown that he presented on direct appeal to the highest state court all the claims raised and crucial facts alleged in the instant Petition. Moreover, state post conviction proceedings that challenge the same convictions on the same grounds as in his

---

[23]   If Mr. McCormick had clearly delineated his claims and the facts in support in a form § 2254 petition, and had fully and properly exhausted on those claims, he could have directly answered the questions on exhaustion in the form as to each claim; and if he then had not filed multiple unnecessary motions here and in the appellate court, these routine, preliminary issues would have taken much less time to resolve.

federal Petition are currently pending in the Kansas appellate
courts.  The court concludes that petitioner has not shown that he
has fully and properly exhausted state court remedies on all claims
raised in his federal Petition.  Nor has he shown cause why this
mixed Petition should not be dismissed.  For all the foregoing
reasons, the Petition is dismissed, without prejudice.

The court has assured itself that a dismissal of this
action at this time, without prejudice, will not result in a time-
bar to any future attempt by Mr. McCormick to seek federal habeas
review of his person-felony convictions.  It appears instead that,
due to statutory tolling for his pending 1507 proceedings, time
currently remains in the limitations period for him to file a
federal habeas petition once he has fully and properly exhausted
his post-conviction remedies in state court.  Petitioner is
nevertheless again forewarned that he must remain constantly
vigilant in order not to forfeit his right to federal habeas corpus
review.

**OTHER MOTIONS**

Petitioner's other pending motions are denied as moot.
Only his Motion for Immediate Ex Parte Hearing (Doc. 13) calls for
a brief additional discussion.  In this motion, Mr. McCormick seeks
an "immediate, emergency, ex parte hearing" to demonstrate that
"evidence exists that can only be obtained by the court's
intervention" that will prove the state courts are "ineffective to
protect" his rights.  This motion contains no facts whatsoever.  It
is based solely upon innuendo that an unnamed person or persons
allegedly has and might destroy this "evidence" that is not

described to conceal "their own malfeasance."  The court is not convinced by these utterly bald statements either that an immediate, emergency, ex parte hearing is warranted, or that evidence exists showing there is an absence of available State corrective process within the meaning of 28 U.S.C. § 2254(b)(1)(B).

IT IS **THEREFORE BY THE COURT ORDERED** that this action is dismissed, without prejudice, as a mixed petition.

IT IS **FURTHER ORDERED** that petitioner's Motion to Alter and Amend Judgment (Doc. 8) and Motion for Recusal and Random Reassignment (Doc. 9) are denied.

IT IS **FURTHER ORDERED** that petitioner's other pending motions (Docs. 10, 11, 12, 13, 14) are denied as moot.

IT IS SO ORDERED.

Dated this 30th day of September, 2011, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge